## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Elvis M. Samuels

v.

Fredericksburg Motorcars et al.

November 25, 1997

Case No. CL97-15

BY JUDGE WILLIAM H. LEDBETTER, JR.

James Reynolds, one of the remaining defendants in this multi-faceted case, demurs to the plaintiff's fraud allegations against him.

### Facts

The plaintiff, Elvis M. Samuels, purchased a 1989 Isuzu Amigo from Fredericksburg Motorcars on August 29, 1995, for $6,000.00. Fredericksburg Motorcars is a used car dealer doing business on Jefferson Davis Highway in Spotsylvania County. According to the amended motion for judgment, it is an "unincorporated business." The salesman with whom Samuels dealt was Douglas M. Freeman, an employee of Fredericksburg Motorcars.

(Samuels alleges that Worldwide Auto, Inc., also was involved in the transaction because "Fredericksburg Motorcars was acting as an agent of Worldwide by selling the car as part of an undisclosed consignment . . . .")

After Samuels purchased the car, he discovered that it was "unsafe" and "not a good value." He alleges that the car was seriously damaged in a 1993 collision, "improperly rebuilt," and "returned to highway use without mandatory inspection and approval [of DMV]. . . ."

Samuels brought this action against Fredericksburg Motorcars, Freeman (the salesman), Worldwide, and Donald Jarrell ("agent and employee" of Worldwide) for recovery of the purchase price, punitive damages, and attorney's fees.

In addition, Samuels sued others who had had connections with the car subsequent to the 1993 collision.

Troy Minor is an automobile mechanic. He has a shop in Fredericksburg. He performed work on the car in July 1995 for Worldwide. Samuels says that the work was carelessly done "with wanton disregard for the safety of the operator and passengers of the Amigo."

B & B Automotive is an automobile repair shop in Fredericksburg. It, too, performed improper work on the car, according to Samuels. Specifically, B & B Automotive allegedly replaced the odometer.

Reynolds performed repairs on the car shortly after it was wrecked. He sold the car to Worldwide knowingly concealing the fact that it should have been branded as "salvage."

In his amended motion for judgment, Samuels seeks damages against the sellers (Fredericksburg Motorcars, Freeman, Worldwide, and Jarrell) for breach of contract. Count II alleges fraud (actual and constructive) against the sellers, as well as B & B Automotive, Minor, and Reynolds. Samuels sets forth a claim under the Virginia Consumer Protection Act against Fredericksburg Motorcars and Worldwide in Count III. In Count IV, he seeks damages against Worldwide, Jarrell, B & B Automotive, and Minor under Virginia Code § 46.2-112 et seq. for odometer tampering. Count V asserts a claim of negligence and gross negligence against Reynolds, Worldwide, Jarrell, and Minor.

Default judgment was entered against Minor on March 18, 1997. All other defendants have responded. Samuels has dismissed Worldwide, Jarrell, and B & B Automotive.

## Decision

Reynolds' demurrer was argued on November 17, 1997. As noted above, it addresses only the fraud allegations in Count II.

According to Samuels, Reynolds acquired the car shortly after it was wrecked in 1993 from Elliott's Enterprises, Inc., a towing company in Ruther Glen. Reynolds obtained the certificate of title from Elliott's. After performing repair work, Reynolds sold the car to Worldwide. Although Elliott's informed Reynolds that the car was "salvage," Reynolds passed along the certificate of title provided to him by Elliott's. (As noted above, Worldwide later consigned the car to Fredericksburg Motorcars who sold it to Samuels.)

Samuels asserts that the car was nothing but salvage, that it should have been branded as salvage, that Reynolds knew these things, and that Reynolds fraudulently repaired the car and sold it to Worldwide, a car

dealer, without branding it as a salvage vehicle. Because Reynolds knew that Worldwide was a retail dealer, Samuels continues, he knew that the vehicle would be returned to the stream of commerce.

Assuming arguendo that Reynolds failed to comply with the statutory provisions relating to salvage vehicles, nonrepairable vehicles, and rebuilt vehicles (Virginia Code § 46.2-1600 et seq.), the court is of the opinion that such conduct does not give every subsequent purchaser of the car a private fraud action against him.

Actual fraud is a misrepresentation of a material fact, knowingly and intentionally made, with the intent to mislead another person, which that person relies upon with the result that he is damaged by it. The elements of actual fraud are well known. See *Evaluation Research Corp. v. Alequin*, 247 Va. 143 (1994).

Constructive fraud is a misrepresentation of a material fact, innocently or mistakenly made, with the intent that a person will rely on it and which that person relied upon with the result that he was damaged by it. See *Kitchen v. Throckmorton*, 223 Va. 164 (1982).

A "misrepresentation" may result from silence, concealment, or suppression of facts as well as from affirmative representations, depending on the circumstances. See *Van Duesen v. Snead*, 247 Va. 324 (1994).

Punitive damages are available only if there is actual fraud.

From these definitions, it is obvious that for there to be actionable fraud, some form of misrepresentation must be made to someone and the person to whom the misrepresentation is made must rely on the misrepresentation to his detriment.

Here, Samuels never had any contact whatever with Reynolds. Reynolds never misrepresented anything to Samuels because he never communicated with him, directly or indirectly, and did not know or have reason to know that he would become a subsequent purchaser of the car.

Samuels concedes in argument before this court that his allegations of "misrepresentation" against Reynolds do not refer to any statements or concealments directly made by Reynolds to Samuels. Instead, Samuels constructs an argument that Reynolds owed an obligation to the general public, to all potential subsequent owners of the car, to reveal to his immediate transferee the history of the vehicle. It is on that basis, Samuels concludes, that Reynolds defrauded him. The court rejects that argument and holds that Reynolds is not answerable in fraud to Samuels under the circumstances alleged in the pleading.

This case does not involve title or ownership of a motor vehicle. It is an action for recovery of the purchase price, plus punitive damages, because of the defective condition of the car.

Because Reynolds did not make any misrepresentation to Samuels regarding the physical condition of the car, Samuels has no cause of action in fraud against Reynolds. Accordingly, Reynolds' demurrer will be sustained and Count II will be dismissed as to him.