## CIRCUIT COURT OF FAIRFAX COUNTY

Colleen McGlen

v.

Roy Eugene Barrett et al.

Case No. CL 2007-12720

BY JUDGE JONATHAN C. THACHER

January 9, 2009

This matter came before the Court on the following motions: (1) Defendants Martha Brightsen and Long & Foster Real Estate, Inc.'s demurrer to Plaintiff's Amended Complaint; (2) Defendants Prince William Real Estate,

Inc., and David Baker, Sr.'s plea in bar and demurrer to the Amended Complaint; and (3) Defendants Roy and Roxann Barrett's plea in bar and demurrer to the Amended Complaint. After considering the pleadings, the oral and written arguments of counsel, and the relevant legal authority, the Court sustains the plea in bar of the Barretts, dismissing Count VII against them; overrules the plea in bar of Baker and Prince William Real Estate; sustains all demurrers pertaining to the award of attorney's fees and punitive damages; sustains the demurrers of Defendants Roy and Roxann Barrett and of Defendants Baker and Prince William Real Estate to the counts of actual and constructive fraud asserted against them; and sustains the demurrer of Defendants Baker and Prince William Real Estate to Plaintiff's claims of professional negligence asserted against them.

## Background and Factual Findings

This matter involves the sale of residential property in Vienna, Virginia, for the purpose of constructing a new, upscale home. Plaintiff Colleen McGlen retained Defendants Martha Brightsen and Long & Foster Real Estate, Inc., (collectively referred to as "Long & Foster") as real estate agents for the purchase of suitable property. Long & Foster found the subject property in Vienna through the Metropolitan Regional Information System ("MRIS"). The Metropolitan Regional Information System is an online database that lists homes for sale. Defendants Roy and Roxann Barrett listed the subject property on MRIS through their real estate agents, Defendants David Baker, Sr., and Prince William Real Estate, Inc. (collectively referred to as "Prince William Real Estate").

After viewing the subject property and reviewing the two MRIS property listings, Plaintiff McGlen believed the subject property was desirable for the construction of a new home. Unbeknownst to the Plaintiff, various Chesapeake Bay preservation ordinances designate the property as a Resource Protection Area. As a result, there are numerous building restrictions on the property.

Plaintiff claims that each defendant actively concealed the Resource Protection Area designation of the property from her. The Virginia Real Property Disclosure Act requires a seller of residential property to either disclose certain conditions affecting a property or make a disclaimer of representations and warranties. See Virginia Code § 55-517, *et seq.* The disclaimer provided by the defendants to McGlen failed to include statutory language concerning the Chesapeake Bay Preservation Act. The disclaimer statement was signed by the Barretts on May 25, 2006, and executed by McGlen on September 5, 2006. Plaintiff avers that, because the Defendants

did not provide her with a disclaimer containing the Chesapeake Bay Preservation Act language, the defendants concealed the Resource Protection Area status of the property.

Plaintiff claims that the building restrictions on the property severely limited her ability to build a new home and to improve the property as planned. Plaintiff avers that this diminished the property's value, increased costs of construction, increased engineering expenses, caused the Plaintiff to default on her loans, resulted in the Plaintiff being upside-down with respect to the property, and adversely affected Plaintiff's credit rating.

## Analysis

In her Amended Complaint, the Plaintiff alleges eight claims against the various defendants. Upon the written pleadings and the oral arguments of Plaintiff's counsel, it was established that Count VIII: Negligence *Per Se* against both the Barretts and Count VI: Breach of the Representation Agreement against Baker and Prince William Real Estate are to be withdrawn by nonsuit. As such, the Court will not deal with the merits of the defendants' demurrers regarding these issues. This leaves the Court to decide:

> Defendants' Respective Demurrers to:
>> Plaintiff's Request for Attorney's Fees and
>> Plaintiff's Request for Punitive Damages,
> Roy and Roxann Barrett's Demurrers to:
>> Count I: Actual Fraud and
>> Count II: Constructive Fraud,
> Roy and Roxann Barrett's Plea in Bar to:
>> Count VII: Violation of Virginia Real Property Disclosure Act,
> Baker and Prince William Real Estates Plea in Bar and Demurrers to:
>> Count I: Actual Fraud,
>> Count II: Constructive Fraud, and
>> Count V: Professional Negligence.

The Court will first address the Barretts' and Prince William Real Estate's pleas in bar. The Court will then address the defendant's demurrers based on the claims they involve.

### The Pleas in Bar of the Barretts and Prince William Real Estate

"A plea in bar is a defensive pleading that reduces the litigation to a single issue," *Kroeger Co. v. Appalachian Power Co.*, 244 Va. 560, 562, 422 S.E.2d 757 (1992), "which, if proven, creates a bar to the plaintiff's right of

recovery." *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882 (1996). Both defendants claim that the one year statute of limitations contained in Va. Code § 55-524 bars claims asserted against them. The Barretts limit their request to a plea in bar dismissing Count VII: Violation of the Virginia Residential Property Disclosure Act. Prince William Real Estate claims that the one year statute of limitations contained in Va. Code § 55-524 requires the court to dismiss the entire action. The Court sustains the plea in bar of the Barretts, dismissing Count VII against them, and overrules the plea in bar of Prince William Real Estate.

Va. Code § 55-524 establishes causes of action under the Virginia Residential Property Disclosure Act and specifically provides remedies for failure of an owner to comply with the provisions of this chapter. See Va. Code § 55-524(B). The subsection also establishes a one year statute of limitations requiring that actions "be commenced within one year of the date the purchaser received the disclosure or disclaimer statement. If no disclosure or disclaimer statement was delivered to the purchaser, an action shall be commenced within one year of the date of settlement if by sale or occupancy if by lease with an option to purchase." See Va. Code § 55-524(C).

The parties inadvertently make reference to both the 2005 and 2007 versions of Va. Code § 55-524(C). The Virginia legislature effected amendments to the text of this provision on July 1, 2007, excluding the language "or disclaimer" from the date by which the action must be commenced. In Virginia, a new statute of limitations does not apply retroactively, absent a contrary intent expressed in the new statute. *See Ferguson v. Ferguson*, 169 Va. 77, 86-87, 192 S.E. 774 (1937) (supporting the principle that "statutes of limitation are presumed to be prospective and not retrospective in their operation, in the absence of a clear legislative intent to the contrary, and the presumption is against any intent on the part of the legislature to make such a statute retroactive"); *see also* Virginia Code § 1-16 (giving the *Ferguson* principle that new laws are presumed prospective in operation statutory approval). As the Virginia Assembly did not express any retroactive intent, the 2005 version of Virginia Code § 55-524(C) is the applicable provision to the case at bar because the disputed disclaimer was given to the defendant in 2006.

All parties agree that Plaintiff was given a disclaimer statement that did not contain the statutory language regarding the Chesapeake Bay Preservation Act on September 5, 2006. The parties further concede that settlement of the contract occurred on October 20, 2006, and that Plaintiff filed her case in the Circuit Court of Fairfax County on October 19, 2007.

Defendants contend that they gave plaintiff a disclaimer and, as such, the statute of limitations commenced on September 5, 2006. Plaintiff argues that she was not provided any disclaimer or disclosure regarding the specific notice of the Chesapeake Bay Preservation Act. As a result, Plaintiff argues that the settlement date, October 20, 2006, is the proper date to begin calculating the statute of limitations.

This Court finds that the proper date for commencing the statute of limitations is September 5, 2006: the date the Defendants gave Plaintiff the disclaimer statement, albeit in a statutorily deficient form. Virginia is a plain meaning jurisdiction. A principal rule of statutory interpretation is that courts will give statutory language its plain meaning. See *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313, 608 S.E.2d 901 (2005). The plain text of Va. Code § 55-524(C) only provides for two scenarios: (1) when a disclosure or disclaimer is provided; and (2) when a disclosure or disclaimer is not provided. In the instant case Defendants provided Plaintiff with a disclaimer. Therefore, the Plaintiff filed outside the applicable one year statute of limitations.

However, this statute of limitations only bars Count VII, the direct claim arising under the Virginia Residential Property Act. Whether the remaining claims asserted against the defendants are brought *ex contractu* or *ex delicto*, the suit was filed well within the statutes of limitations for personal injury, governed by Va. Code § 8.01-243, and contracts, governed by Va. Code § 8.01-246. As such, the plea in bar of the Barretts is sustained, dismissing Count VII against them, and the plea in bar of Prince William Real Estate is overruled.

*The Respective Demurrers of the Defendants*

A. *Legal Standard*

The purpose of a demurrer is to determine, as a matter of law, whether facts as they are pleaded are sufficient to pursue the legal and equitable relief sought. See *Votsis v. Ward's Coffee Shop, Inc.*, 217 Va. 652, 231 S.E.2d 236 (1977). Under Virginia law, "[a] demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which can be viewed as impliedly alleged and those which may be fairly and justly inferred from the facts alleged." See *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993). However, a demurrer does not admit the legitimacy of the pleader's legal conclusions. See *Id.*

B. *Attorney's Fees and Punitive Damages*

As a preliminary matter, Plaintiff concedes that the Amended Complaint does not allege a sufficient factual or legal basis for an award of attorney's fees. As such, all demurrers pertaining to the award of attorney's fees are sustained.

In addition, the demurrers as to all punitive claims are sustained as no facts supporting punitive damages have been alleged. Plaintiff argues that the breaches of the duties and obligations owed to her were so numerous and so substantial that they amounted to willful and wanton conduct. However, in Virginia punitive damages are allowed "only where there is misconduct or malice, or such recklessness or negligence as evinces a *conscious* disregard of the rights of others." *See Doe v. Isaacs*, 265 Va. 531, 536, 579 S.E.2d 174 (2003) (citing *Baker v. Marcus*, 201 Va. 905, 114 S.E.2d 617 (1960) (quoting *Wood v. American Nat. Bank*, 100 Va. 306, 316, 40 S.E. 931, 934 (1902))).

Punitive damages "are something in addition to full compensation, and something not given as plaintiff's due." *See Baker*, 201 Va. at 909. Even in the light most favorable to the pleader, the Amended Complaint does not contain facts so reckless as to justify the request for an award of punitive damages. The Amended Complaint, simply, does not allege *facts* that any of the defendants were *conscious* or aware that their conduct would cause injury to another. As a result, the demurrers regarding punitive damages are sustained.

C. *The Demurrers to Actual and Constructive Fraud*

Defendants Roy and Roxann Barrett and Defendants Baker and Prince William Real Estate demur to the respective counts of actual fraud and constructive fraud alleged against them. Plaintiff predicates these claims on Defendants' alleged concealment of the building restrictions encumbering the subject property by advertising the property as an ideal building lot in a great location and failing to disclose the lots designation as a Resource Protection Area in either the disclaimer or regional sales contract. The demurrers of these Defendants are sustained as to both actual fraud (Count I) and constructive fraud (Count II).

The elements of actual fraud are a false representation of a material fact, made intentionally or knowingly, with intent to mislead, reliance by the misled party, and injury to the misled party. *Winn v. Aleda Constr. Co.*, 227 Va. 304,

315 S.E.2d 193 (1984). A claim of fraud must be pleaded with particularity. *Mortarino v. Consultant Eng'g Services*, 251 Va. 289, 467 S.E.2d 778 (1996).

The elements of constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently and the injured party was damaged as a result of his reliance upon the misrepresentation. Additionally, "a finding of constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this [representation]." *Prospect Development Co. v. Bershader*, 258 Va. 75, 85, 515 S.E.2d 291 (1999) (citations omitted).

Defendants assert several arguments that the Plaintiff cannot maintain actions of actual and constructive fraud, including but not limited to (1) the statements contained in the MRIS listing were merely an opinion, constituting seller's talk; (2) the plaintiff cannot maintain an action for the purported absence of a disclaimer statement because of the "as is" nature of the regional sales contract; and (3) the plaintiff is charged with constructive notice of Fairfax County's Chesapeake Bay Preservation Ordinance.

First, Plaintiff has no compelling argument that the statements made in the MRIS Listing were "representations of fact." The MRIS, by its very nature, is an online database advertising homes for sale. The statements made by Defendants were mere sales pitches and opinions to an on-line audience, upon which no reliance should have been placed. Defendants correctly observe that expressions of opinion cannot form the basis of an action for fraud. *See Saxby v. Southern Land Co.*, 109 Va. 196, 198, 63 S.E. 423 (1909). As a result, the statements made in the MRIS Listing cannot form the basis for Plaintiff's claims of actual or constructive fraud.

Second, Defendants contend that the "as is" nature of the sale negates Plaintiff's reliance upon the Defendants' failure to disclose the lot's RPA designation. Without reliance, the plaintiff cannot sustain either an actual or constructive fraud claim.

However, Plaintiff correctly asserts that a buyer can claim fraud in the inducement, notwithstanding the fact that a sale was made "as is." *See George Robberecht Seafood, Inc. v. Maitland Brothers Co.*, 220 Va. 109, 255 S.E.2d 682 (1979). The Defendants counter by citing the doctrine of *caveat emptor*, to which Plaintiff responds with the diversion exception to *caveat emptor*.

Essentially, in Virginia the doctrine of caveat emptor requires purchasers of real property to use ordinary care in making inquiries and inspecting the premises before entering into a binding commitment to purchase. *Kuczmanski v. Gill*, 225 Va. 367, 369, 302 S.E.2d 48 (1983). The

diversion exception to caveat emptor holds that a purchaser may be relieved of these duties when a seller's actions conceal and divert the purchaser from making inquiries or inspection that a prudent purchaser would otherwise make. *See Van Deusen v. Snead,* 247 Va. 324, 329, 441 S.E.2d 207 (1994).

At common law, "concealment may be the equivalent of a false representation." *Spence v. Griffin,* 236 Va. 21, 28, 372 S.E.2d 595 (1988); accord *Van Deusen v. Snead,* 247 Va. 324, 328, 441 S.E.2d 207 (1994). However, proof of misrepresentation by nondisclosure requires "evidence of a knowing and a deliberate decision not to disclose a material fact." *Norris v. Mitchell,* 255 Va. 235, 241, 495 S.E.2d 809 (1998).

In the instant case, Plaintiff does not allege any facts regarding Defendants' decision not to disclose the RPA status of the lot. In paragraphs 40 and 41 of the Amended Complaint, Plaintiff merely asserts the deletion of a clause in the Regional Sales Contract and Defendants' failure to deliver a correct disclaimer. Even in the light most favorable to the pleader, these facts do not give rise to the inference that defendants made a deliberate and knowing decision. This is particularly true when one considers the actual disclaimer provided to the Plaintiff and the statutory history of Va. Code § 55-519, which requires disclosure.

While it was not mentioned by any party, Defendants Roy and Roxann Barrett signed the disclaimer statement provided by Prince William on May 25, 2006. At that time, Virginia Code § 55-519 did not require a specific disclaimer as to the Chesapeake Bay Preservation Act. Indeed, the disclaimer used was statutorily sufficient at the time the Barretts signed it. The Virginia General Assembly added the requirements of the Chesapeake Bay Preservation disclaimer to become effective on July 1, 2006. Thus, when Plaintiff signed the form on September 5, 2006, the initial legal sufficiency of the form had become insufficient. However, the inference to be drawn from the facts provided in the pleadings and attachments is not that the Defendants deliberately decided to conceal the RPA designation, but that they unintentionally used an outdated form. The pleadings and their attachments do not contain any facts that support the knowing or deliberate decision not to disclose a material fact of either Roy and Roxann Barrett or Baker and Prince William Real Estate.

Furthermore, as Prince William Real Estate and Baker highlight in their Memorandum, the Plaintiff is charged with constructive notice of the existence of the Resource Protection Area. In 1925, the Supreme Court of Virginia held in *Millman v. Swan,* 141 Va. 312, 127 S.E. 166 (1925), "[n]otice of the existence of ordinances is required to be taken by all upon whom they have a binding effect as the inhabitants of a municipal

corporation." *Id.* (quoting 2 McQuillin, *Municipal Corporations*, § 653). This constructive notice vitiates any reliance Plaintiff placed on Defendants' statements.

In *Millman*, a lot was sold at public auction to a vendee who sought to build a warehouse on the land. *Id.* at 314. The lot was described at auction and confirmed by the vendor as being outside zoning restrictions pertaining to fire limits. *Id.* at 315. In actuality, the zoning ordinance encumbered the land, making it much more expensive to build upon the lot. *Id.* Despite the vendee's reliance upon the statement that the lot was outside of the fire limits, the Court held that the vendee could not disclaim knowledge of an ordinance which has the force of law. *Id.* at 323. The Court reasoned from a line of negligence cases that "[p]ersons and corporations within the corporate territory are bound to take notice of their provisions when duly enacted and promulgated and to obey them . . . within the municipal boundaries." *Id.* (citation omitted). The Court held that there was no distinction between personal injury cases and contract cases such that actual knowledge of the properly enacted ordinance was imputed to the vendee, eviscerating any reliance he placed on the false statements made at auction.

In the instant case, the Chesapeake Bay Preservation Act, Va. Code §§ 10.1-2100 *et seq.*, generally requires local jurisdictions, such as Fairfax County, to protect specific bodies of water by surrounding them with zones in which development is prohibited or restricted. Defendants argue "[k]nowledge of the Resource Protection Area, essentially a zoning restriction per *Millman*, imposed by Fairfax County's Chesapeake Bay Preservation Ordinance on the property is in the public domain and is accessible to anyone." *See* PWRE and Baker Plea in Bar at 7.

The provisions of the Code of the County of Fairfax established pursuant to that act, County of Fairfax Code §§ 118-1-1 *et seq.*, apply to all land located within the unincorporated areas of Fairfax County and became effective at 12:01 A.M. on July 1, 1993. *See* County of Fairfax Code §§ 118-1-3, 118-1-7. The ordinances' findings specifically place residents of the municipality on notice that "the entirety of Fairfax County drains into the Potomac River and ultimately the Chesapeake Bay," and states "[a]ny use or development within the County can, therefore, impact the water quality of the Bay." *Id.* at § 118-1-4(c). The act specifically defines RPA status, establishes areas of applicability, and requires that "there shall be a map of Chesapeake Bay Preservation Areas adopted by the Board of Supervisors." *Id.* at §§ 118-1-6, 118-1-7, 118-1-9. The RPA status of any parcel of land within the County is readily and publicly available.

This Court notes without deciding that, while the subject property resides at a Vienna, Virginia, address, it does not appear to fall within the political boundaries of the Town of Vienna. Application of the County of Fairfax Code appears to be appropriate. However, even if the subject property should reside within the incorporated Town of Vienna, Defendants' argument remains pertinent as similar provisions of the Chesapeake Bay Preservation Act are enacted and available within the public domain via the zoning ordinances of "The Code of the Town of Vienna, Virginia," at Article 21.1. *See* Vienna Town Code §§ 18-216.1.1 *et seq.* (Revised May 2006).

There is no cause for distinction between the instant case and the ruling in *Millman*. Indeed, a stronger case for imputing actual knowledge of the zoning ordinance can be made in the case at bar because, unlike the affirmatively false statement made in *Millman*, the Plaintiff in the present case merely claims that the Defendants did not disclose the lot's RPA status.

Despite the affirmative obligations of disclosure and disclaimer required by the Virginia Real Property Disclosure Act, actual knowledge of the Fairfax County Chesapeake Bay Preservation Ordinance is imputed to the Plaintiff. As noted above, an action for violation of this provision of the Virginia Code is specifically barred in the instant case by the one-year statute of limitations contained at Va. Code § 55-524(C). Plaintiff cannot, therefore, maintain an action of actual fraud or constructive fraud based on her ignorance of the zoning restrictions. The actual knowledge of Plaintiff vitiates the element of reliance required of either claim. Therefore, the demurrers of Defendants Roy and Roxann Barrett and of Prince William Real Estate and Baker to the counts of actual and constructive fraud asserted against them are sustained.

D. *The Demurrer of Defendants David Baker, Sr., and Prince William Real Estate to the Count of Professional Negligence Asserted against Them*

The economic loss rule precludes Plaintiff from recovering purely economic damages. As such, the demurrers of Defendants Baker and Prince William Real Estate to the Count of Professional Negligence are sustained.

The economic loss rule is a product-liability concept that limits tort recovery against parties not in privity with the purchaser of a product. *See Sensenbrenner v. Rust, Orling, & Neale, Architects, Inc.*, 236 Va. 419, 423, 374 S.E.2d 55 (1988). Although sales of real estate in Virginia are not controlled by product liability concepts, the economic loss rule does apply to sales of real property alleged to be qualitatively defective. *See Sensenbrenner*, 236 Va. at 423. The rationale of the rule is that tort law was not designed to

compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. *See Kamlar Corp. v. Haley*, 224 Va. 699, 706, 299 S.E.2d 514 (1983).

As the Supreme Court of Virginia reiterated in *Filak v. George*, 267 Va. 612, 594 S.E.2d 610 (2004), "The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations. Thus, when a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Id.* at 613 (*citing Willard v. Moneta Bldg. Supply, Inc.*, 262 Va. 473, 480, 551 S.E.2d 596 (2001); *Ward v. Ernst & Young*, 246 Va. 317, 325, 435 S.E.2d 628 (1993); *Rotonda Condo. Unit Owners Ass'n v. Rotonda Assocs.*, 238 Va. 85, 90, 380 S.E.2d 876 (1989); *Sensenbrenner*, 236 Va. at 425.

As such, the rule precludes a party from recovering purely economic losses based on a tort theory, absent privity of contract. In the instant case, Plaintiff's damages are expressed as a diminution of the property's value, an increase in the expenses of construction, an increase in engineering costs, a resultant default on plaintiff's loans, a resultant foreclosure on the property, and a decrease in Plaintiff's credit rating.

Taking as true all material facts that have been pleaded and the inferences that may be properly drawn from them, the Amended Complaint alleges purely economic losses derived from the settlement of a contract for land. Defendants Baker and Prince William Real Estate represented the Barretts in this contract. They did not serve as the Plaintiff's agent and were not parties to any contract with the Plaintiff. Without privity of contract, Plaintiff may not recover her economic losses against Baker and Prince William Real Estate based on a theory of tort.

This is the exact type of claim that resulted in the United States Supreme Court's affirmation of the economic loss rule to prevent contract law from "drown[ing] in a sea of tort." *See East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 866, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986) (citing G. Gilmore, *The Death of Contract*, 87-94 (1974)). As such, the demurrers of Baker and Prince William Real Estate to Plaintiff's claims of professional negligence alleged against each of them are sustained.

*Conclusion*

Plaintiff represented in her memorandum and oral arguments that Count VI: Breach of the Representation Agreement against Baker and Prince William Real Estate and Count VIII: Negligence *Per Se* against both the

Barretts are to be withdrawn by nonsuit. Therefore, after sustaining and overruling the various pleas in bars and demurrers of the defendants, the remaining claims contained in the Amended Complaint are Count III: Breach of the Representation Agreement (Buyer's Agents) asserted against Defendants Brightsen and Long & Foster and Count IV: Professional Negligence (Buyer's Agents) asserted against Defendants Brightsen and Long & Foster. None of the remaining claims contain requests for attorney's fees or punitive damages.

Generally, the court will grant leave to amend the pleading if a demurrer is sustained. However, in the instant case, it appears that this will only lead to a reassertion of issues of law already ruled upon. As such, Plaintiff is not granted leave to amend the already amended Complaint. *See Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 337 S.E.2d 744 (1985).

March 23, 2009

This matter came before the Court on the Plea in Bar and Motion for Complete or Partial Summary Judgment of Defendants Brightsen and Long & Foster, Real Estate, Inc., to the claims asserted against them in Counts III and IV of the Amended Complaint. At the close of oral argument, the Court took the matter under advisement to allow a complete review of the parties' written filings. After considering the pleadings, the oral and written arguments of counsel, and the relevant legal authority, the Court overrules the plea in bar and denies the motion for summary judgment.

*Background*

Other than the procedural history of the case, the facts stated are those alleged in the complaint. Because the parties presented no evidence, when resolving a plea in bar, the Court considers only the pleadings, and assumes all facts alleged in the complaint to be true. *See, Schmidt v. Household Finance Corp.*, 276 Va. 108, 661 S.E.2d 834 (2008).

The facts are described in some detail in this Court's earlier opinion of January 9, 2009, but for the instant motions, the following is sufficient.

Defendant Brightsen is an experienced real estate agent and acted as Plaintiff's agent in the purchase of real property. Long & Foster is Brightsen's employer. Advised and assisted by Defendants Brightsen and Long & Foster, Plaintiff identified a parcel of realty that interested her, contracted to purchase it, and closed the purchase on October 20, 2006. After settlement, Plaintiff

learned for the first time that state and local ordinances precluded her from building on the property in the manner she had intended. As a result, the property does not meet her needs.

Plaintiff brought this action against the sellers, the sellers' agents, and her agents. Although the legal theories of liability included breach of contract, fraud, and professional negligence, the essential claim in all counts was the same. None of the defendants told her before the sale that existing state and local ordinances made it impossible for her to use the property as she wished.

Applying the Virginia Supreme Court's decision in *Millman v. Swan*, 141 Va. 312, 127 S.E. 166 (1925), this Court imputed knowledge of the existence of the ordinances to the Plaintiff and dismissed her claims for fraud against the sellers and the sellers' agents. Defendants Long & Foster and Brightsen now ask the Court to impute the same knowledge to the Plaintiff with respect to her claims against them and to dismiss her claims for breach of contract (Count III) and professional negligence (Count IV). They argue that, because the Court has imputed knowledge to her, they cannot have been negligent or breached their contract with her by failing to tell her about the existence of the ordinances or their effect on her plans for the lot.

*Analysis*

As succinctly stated by Plaintiff's counsel at oral argument, her claims against the sellers on the one hand and her claim against her own agents on the other "are apples and oranges." The obligation of a seller in an arms-length transaction to disclose the existence of a public ordinance is a world apart from the contractual or professional obligation of a professional who has been hired by a buyer to advise and assist him or her in a transaction. Indeed, the imputation of knowledge to the buyer is lawful in no small part because she hired experts to assist her. *See generally, Beck v. Smith*, 260 Va. 452, 538 S.E.2d 312 (2000).

It is entirely possible that Plaintiff will not prevail at trial. It may be that the trial court, with all of the evidence before them and with the able assistance of experts, will determine that these Defendants did not owe their client any duty to advise her of the existence and effect of the ordinances. And, of course, the trial court might find that whatever duty Defendants owed their client was satisfied. But this Court cannot hold as a matter of law that the public nature of an ordinance precludes a client's claim against a professional adviser who was paid precisely to advise his or her client of the existence and effect of a public ordinance.

Defendants' Counsel cites no authority other than repeated references to "the law of the case." If he reads the Court's January 21, 2009, order to find as a fact that Plaintiff had actual knowledge of the existence of the ordinances and their legal effect, he is simply mistaken. The Court made no such factual finding, as indeed it could not without an evidentiary hearing.

Defendants' plea in bar is overruled, and their motion for summary judgment is denied.